## CIRCUIT COURT OF LOUDOUN COUNTY

Robert Charles Kelly

v.

John Grigsby

March 8, 2005

Case No. (Law) 31482

By Judge Thomas D. Horne

This case came to be heard on Plaintiff Robert Charles Kelly's Motion for Partial Summary Judgment and Defendant John Grigsby's Motion for Summary Judgment. The linchpin to a resolution of these motions is whether the words spoken by the defendant were defamatory *per se*. Plaintiff asserts that defendant's public statement that he was "shacking up with a blond from Hillsboro" was defamatory *per se*. The statement, made at a meeting of the Board of Supervisors, was recorded and viewed by the Court in connection with the instant motion. Mr. Grigsby contends that the statement was mere parody, satire, or street theatre and that, "no reasonable inference could be drawn that the individual identified in the statements, as a matter of fact, engaged in the conduct described." *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998).

At a meeting of the Board of Supervisors of Loudoun County held on February 17, 2004, the defendant, Mr. Grigsby, [feigning] to be the plaintiff, Mr. Kelly, appeared and when called upon to speak, commenced a monologue in which he commented upon his relationship with his wife. The real Mrs. Kelly, it would appear, had previously appeared before the Board and taken positions that Mr. Grigsby wished to comment upon through the persona of

her husband. Mrs. Kelly would later appear before the Board at the same February meeting.

One might infer from the monologue that Mr. Kelly was frustrated with his wife's activities and as a result their marital relationship had become strained. As a prop, Mr. Grigsby used a supposed whiskey bottle that he prominently displayed while addressing the Board. It could be inferred from the monologue that, in addition to his having engaged in an extramarital affair, Mr. Kelly was concerned about his wife's ownership of a knitting shop, interaction with the press, and personal views on matters of public interest.

For the reasons stated in this letter opinion, plaintiff's Motion for Partial Summary Judgment is granted and defendant's Motion for Summary Judgment is denied.

Summary judgment, for all or part of a claim, is the appropriate vehicle when no genuine issue of material fact remains in dispute, and the moving party is entitled to judgment as a matter of law. Va. Sup. Ct. R. 3:18 (2004). The parties do not dispute the applicable standard of review.

At common law, defamatory words that are actionable *per se* are:

(1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party if the charge is true, may be indicted and punished.

(2) Those which impute that a person is infected with some contagious disease, where, if the charge is true, it would exclude the party from society.

(3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.

(4) Those which prejudice such person in his or her profession or trade.

All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

*Great Coastal Express v. Ellington*, 230 Va. 142, 146-47 (1985) (quoting *Fleming v. Moore*, 221 Va. 884, 889 (1981)).

A crime involving moral turpitude is "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man,

or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Id.* at 147 (quoting *Tasker v. Commonwealth,* 202 Va. 1019, 1024 (1961) (quoting *Parr v. Commonwealth,* 198 Va. 721, 724 (1957)).

It is for the Court to determine whether a crime involves moral turpitude. *Bell v. Commonwealth,* 167 Va. 526, 538 (1937). Adultery is an act of moral turpitude. *Nemetz v. INS,* 647 F.2d 432 (1981). "[T]he trial judge, not the finder of fact, must determine whether a statement is defamatory *per se* because it imputes the commission of a crime involving moral turpitude." *Yeagle,* 255 Va. at 296. Once the Court makes a finding of defamation *per se,* in a case involving a private individual without matters of public concern, the matter is submitted to the jury with the instruction that compensatory damages are presumed. *Great Coastal Express,* 230 Va. at 149-51; *Levine v. McLeskey,* 881 F. Supp. 1030 (E.D. Va. 1995). Were the plaintiff a public figure, which he is not, he then would need to prove to the jury that the speaker acted with malice or recklessness in order to obtain punitive damages. *Hustler v. Falwell,* 485 U.S. 46, 52 (1988).

A defamatory statement is actionable if, in light of the surrounding circumstances, a reasonable person would construe the statement as stating actual facts about a person. *Schnare v. Ziessow,* 104 Fed. Appx. 847 (4th Cir. 2004) (holding that statements published in *Dog News* can be interpreted as nothing more than a "lusty and imaginative expression of the contempt felt toward his adversary in the controversy about revising the breed standard" (citations omitted)). *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990) (holding that "the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false").

Generally:

> defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used . . . the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation.

*Carwile v. Richmond Newspapers,* 196 Va. 1, 7-8 (1954) (holding that the reasonable understanding of published statements was that the plaintiff was guilty of unethical conduct and the statements therefore constituted defamation *per se*).

*Yeagle* affirms that "the alleged defamatory statements must still be understood to convey a false representation of fact." *Yeagle*, 255 Va. at 296 (citing *Freedlander v. Edens Broadcasting*, 734 F. Supp. 221, 225-27 (E.D. Va. 1990), *aff'd* 923 F.2d 848 (4th Cir 1991)).

In the present case, the Court will attribute the term "shacking up" from the definition commonly used in association with that term; that is, "to sleep with or live together as unmarried sexual partners." Merriam-Webster Online at http://www.m-w.com; Jamie Gold, "'Capitol': Soaps' Vice Precedent," *The Washington Post*, July 18, 1982, at TV Tab, p. 3; Rowan Scarborough, "Challenge to Adultery Ban," *The Washington Times*, June 2, 1997, at A4. Thus, a reasonable person could interpret Mr. Grigsby's statement that Mr. Kelly "shacked up with some blonde in Hillsboro" as meaning he was having an adulterous relationship. As previously discussed, adultery is considered a crime of moral turpitude. The statement at issue is therefore, defamatory *per se*. *Food Lion v. Melton*, 250 Va. 144 (1995).

While the statement is actionable *per se*, it is for the jury to determine whether, under the circumstances of this case, the phrase was reasonably understood by listeners to describe an actual fact, "taking into consideration the entire background of the case and the context in which those statements were made." *Corr v. Lewis*, 94 Va. 24 (1896); *Richmond Newspapers v. Lipscomb*, 234 Va. 277, 298 (1987); 57 A.L.R.4th 520 (1987).

Accordingly, plaintiff's partial Motion for Summary Judgment is granted and defendant's Motion for Summary Judgment is denied.